**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD DEVORRIS, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 3:2006-183
)
CUMMINGS INCORPORATED, )
THE INTERNATIONAL SIGN SERVICE, )
)
Defendant. )

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This case comes before the Court on the Motion of Defendant Cummings Incorporated, The International Sign Service ("Cummings") to Dismiss, Stay or Transfer. (Document No. 10). For the following reasons, the Court will grant Cummings' Motion to Transfer this case to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).

Plaintiff Donald Devorris ("Devorris") filed a complaint against Cummings on August 10, 2006, in the Court of Common Pleas of Blair County, Pennsylvania. Document No. 1, p. 3. Cummings filed a notice of removal on August 17, 2006 pursuant to 28 U.S.C. § 1441. Document No. 1. The jurisdictional basis for removal was this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1). *Id.*

On August 15, 2006, Cummings filed a complaint against BP Products North America, Inc. ("BP Products"), Blair Sign Company ("Blair") and Devorris in the Chancery Court for Davidson

County, Tennessee. Cummings Inc., The International Sign Service v. BP Products North America, Inc., C.A. No. 3:06-890 (M.D.Tenn.) ("MDTN-06-890"), Document No. 1-2. BP Products, Blair and Devorris filed a notice of removal in the United States District Court for the Middle District of Tennessee on September 15, 2006, on the basis of diversity of citizenship. MDTN-06-890, Document No. 1. Devorris and Blair filed a Motion to Change Venue on February 9, 2007, asking the District Court to transfer the case to this Court. MDTN-06-890, Document No. 17. At the present time, that motion is still pending before the District Court. This Court takes judicial notice of the filings in the case pending in the Middle District of Tennessee.

According to the complaint filed against Cummings by Devorris in this Court, Devorris is an adult individual residing in Altoona, Pennsylvania. Document No. 1-3, p. 1, ¶ 1. Cummings is a Tennessee corporation with its principal place of business in Nashville, Tennessee. *Id.*, ¶ 2. On July 22, 1992, Devorris and Cummings entered into a consulting agreement. *Id.*, ¶ 3. This agreement "has been supplemented by four subsequent [a]mendments." *Id.*, pp. 1-2, ¶ 4. "Pursuant to the terms of the [consulting agreement, Devorris] was to be available to provide [c]onsulting [s]ervices to [Cummings in return for a] monthly compensation." *Id.*, p. 2, ¶ 5. "[This compensation] was due on or before the second business day of each month." Document No. 1-3, p. 1., ¶ 6. "[Devorris] has, at all times, fulfilled the terms and conditions of the [consulting agreement]." *Id.*, ¶ 7. Nevertheless, it is alleged that Cummings "has failed to pay the July 2006 consulting fee", thereby breaching the consulting agreement. *Id.*, ¶¶ 8-9. Devorris asserts that, "under the terms and conditions of the [c]onsulting [a]greement", he is entitled to recover "his consulting fee in monthly installments of $8,333.33 for the forty (40) month balance of the [agreement], which terminates on October 1, 2009." *Id.*, ¶ 10. It is also

alleged that the terms of the agreement entitle Devorris "to recover reasonable attorney's fees" in connection with this litigation. *Id.*, ¶ 11.

According to the complaint filed by Cummings against BP Products, Blair and Devorris, "Cummings is a Tennessee corporation with its headquarters located [in Nashville, Tennessee]." MDTN-06-890, Document No. 1-2, p. 1, ¶ 1. BP Products is a Maryland corporation with "an office in Tulsa, Oklahoma." *Id.*, ¶ 2. Blair "is a Pennsylvania corporation with its corporate headquarters located in Altoona, Pennsylvania." *Id.*, ¶ 3. Devorris "is a citizen and resident ...of Pennsylvania", as well as the president of "The Blair Companies," which maintains its headquarters in Altoona, Pennsylvania. *Id.*, ¶ 4.

Cummings provides "commercial sign management" services nationwide, "including ...design, production, installation and maintenance" services. MDTN-06-890, Document No. 1-2, p. 2, ¶ 6. Cummings' accounts include entities "in the automotive, restaurant, retail, hospitality and financial industries." *Id.* For "several years, Cummings has produced a substantial [number of sign-related products for BP Products'] gas stations/convenience stores and installed and/or arranged for the installment of [these] products." *Id.*, ¶ 7. BP Products "previously made payment on some of the accounts billed by Cummings." *Id.* In an effort "to re-image and re-brand its retail locations in the United States, [BP Products] retained Bovis Lend Lease, Inc. [("Bovis")] to contract and manage vendor relationships." *Id.*, ¶ 8. BP Products and Bovis "entered into a joint venture or unincorporated relationship" with each other "through an entity known as Global Alliance." MDTN-06-890, Document No. 1-2, p.2, ¶ 8. BP Products "also outsourced certain accounting functions to Accenture [BP]." *Id.* Although Cummings "has addressed numerous statements of account to Accenture BP,... several

statements of account...have not been paid." *Id.*

"Cummings was the supplier of ...products described by the acronym 'MID,'" which stood for "Main Identification Pylon," for the central and eastern territories in the United States. MDTN-06-890, Document No. 1-2, p. 2, ¶ 9. Cummings was also the sole supplier of BP Products' "Bull Nose" products, which were produced by Cummings "using machinery which was specifically designed and manufactured to satisfy the product requirements of [BP Products]." *Id.* This specialized machinery was leased to Cummings for the specific purpose of satisfying orders from BP Products. *Id.*, pp. 2-3, ¶ 9. Acting "through Global Alliance and/or Bovis, [BP Products] provided forecasts to Cummings for Bull Nose and MID products." MDTN-06-890, Document No. 1-2, p. 3, ¶ 10. "The last forecast for MID products provided to Cummings [forecasted orders through the middle of 2004]." *Id.* "Cummings relied on [such] forecasts in making its purchases of raw material...." *Id.*

"[B]y providing these forecasts to Cummings..., [BP Products] promised and represented to Cummings that [it] would give Cummings its orders for Bull Nose in the United States and for MID products in the [central and eastern regions of the United States]." MDTN-06-890, Document No. 1-2, p. 3, ¶ 11. Relying on "its agreement with and the representations of [BP Products] as well as the parties' course of dealings, Cummings produced products and acquired raw materials for use in [its] relationship [with BP Products]." *Id.* Cummings continues to possess some of these materials and products. *Id.*

In 2006, BP Products terminated its arrangement with Cummings. MDTN-06-890, Document No. 1-2, p. 3, ¶ 12. Cummings continues to possess Bull Nose equipment, raw materials and finished products for BP Products. *Id.* Nevertheless, "[BP Products] has refused to allow Cummings to

complete the manufacture of the BP-branded raw materials in Cummings possession." *Id.* "[BP Products] has refused to agree to accept and pay for the...finished goods and raw materials or to acquire the...Bull Nose equipment." *Id.*

On July 22, 1992, Cummings, Blair and Devorris entered into a consulting agreement. MDTN-06-890, Document No. 1-2, p. 4, ¶ 13. The consulting agreement, which has been amended four times since its inception, states that "[a]ll questions concerning the construction, validity and interpretation of this Agreement will be governed by the laws of the State of Tennessee." *Id.*, ¶ 13. The consulting agreement included a clause prohibiting Blair and Devorris from assisting Cummings' competitors in efforts to attract customers with whom Cummings had an existing business relationship. *Id.*, pp. 4-5, ¶ 14. As a part of the fourth amendment to the consulting agreement, "[Blair] agreed to use Cummings "as the first-choice sub-contractors for any of Blair's overflow work for letter and signage products." *Id.*, p. 5, ¶ 16.

"In 2003, Cummings provided in excess of $100,000[.00] in sub-contract work for [BP Products] to [Blair]. MDTN-06-890Document No. 1-2, p. 5, ¶ 17. The following year, "Cummings provided in excess of $45,000.00 in subcontract work... to Blair. *Id.* This work included MID products for the central and eastern regions of the United States. *Id.* Devorris and Blair were conscious of Cummings' business relationship with BP Products. *Id.*

Cummings alleges that, in 2004, "Blair and/or Devorris... solicited [BP Products] MID work in the [eastern and central regions of the United States]." MDTN-06-890, Document No. 1-2, p. 5, ¶ 18. The business for these regions had already been promised to Cummings, [which] "had purchased inventory to meet [the] forecasts. *Id.* It is alleged that "[Blair] and/or Devorris communicated "with

Rick Sanchez ("Sanchez")," a Bovis employee, for the purpose of diverting business away from Cummings. *Id.*, pp. 5-6, ¶ 18. It is further alleged that as of the filing of Cummings' complaint in Tennessee, Sanchez is a Blair employee. *Id.*, p. 6, ¶ 18, p. 8, ¶ 24.

On September 8, 2005, a team of representatives from BP Products "visited Cummings' manufacturing plant in Dothan, Alabama." MDTN-06-890, Document No. 1-2, p. 6, ¶ 19. This team included Sanchez, Mike Maddox ("Maddox"), Kent Stoneburner ("Stoneburner"), Eric Ulmer ("Ulmer"), and Gabriela Rincon ("Rincon"). *Id.* The BP Products representatives were provided with detailed drawings stamped "confidential" of the Bull Nose products which were being produced by Cummings using the specially designed Bull Nose equipment. *Id.* They were also permitted to take "photographs of the Bull Nose equipment," apparently with the understanding that the photographs would be kept confidential. *Id.*, ¶ 20. Cummings now alleges that this visit was a "pretext" for the diverting of business away from Cummings and to Blair. *Id.*, ¶ 21. It is alleged that, in 2005, BP Products and Blair commenced negotiations to provide for the termination of the business relationship between BP Products and Cummings and the creation of a new business relationship between BP Products and Blair. MDTN-06-890, Document No. 1-2, p. 7, ¶ 22. Cummings further alleges that these negotiations were kept secret at the insistence of BP Products. *Id.* Meanwhile, during "the first quarter of 2006, Cummings received a substantial volume of orders from [BP Products] for Bull Nose products." *Id.*, ¶ 23. Cummings continued to fill these orders until April 2006, when BP Products informed Cummings of the termination of their existing business relationship. *Id.*

Cummings alleges that BP Products has assigned to Blair the work related to the Bull Nose products that had once been done by Cummings. MDTN-06-890, Document No. 1-2, ¶ 24. It is further

alleged that Blair "has acquired or is in the process of acquiring the machinery and/or equipment needed to produce "the signage products for BP Products. *Id.*, pp. 7-8, ¶ 24. Cummings apparently believes that Blair "has access to the materials that were obtained during the September 2005 site visit at Cummings manufacturing facility in Dothan, Alabama." *Id*, p. 8, ¶ 24.

Cummings alleges that Blair and Devorris "knew or should have known" about the "contractual relationship" between Cummings and BP Products, and that they "improperly solicited... business from [BP Products]" with the intention of ending Cummings' relationship with BP Products. MDTN-06-890, Document No. 1-2, p. 8, ¶ 26. With respect to the consulting agreement between Cummings and Devorris, Cummings alleges that Devorris, despite having been paid for consulting services for "several years", has failed to provide such services. *Id.*, ¶ 27. "In June 2006, Cummings requested that Devorris to provide consulting services regarding...operations and finance." *Id.* Apparently, the terms of the consulting agreement required Devorris to provide consulting services to Cummings on an informal basis for up to three hours in a given five-day period. *Id.*, pp. 8-9, ¶ 27. Cummings alleges that Devorris originally refused to consult on the matters brought to his attention in June 2006 on the ground that they were "beyond the 'scope' of the [c]onsulting [a]greement." MDTN-06-890, Document No. 1-2., p. 9, ¶ 27. Nevertheless, "[a]fter Cummings made another request [for consulting services] in... July 2006, Devorris sent a letter to Cummings "stat[ing] that he had been given access to [Blair's] information, and that he would in fact provide [the] consulting services... requested" by Cummings. *Id.* Despite this promise, Cummings alleges that Devorris has not provided "any consulting services." *Id.*

"On or about June 28, 2006, Cummings sent a formal written notice to [BP Products] regarding

its contractual relationship with [Blair] and Devorris." MDTN-06-890, Document No. 1-2, p. 10, ¶ 29. Cummings also sent six invoices addressed to Accenture BP. *Id.* Cummings alleges that BP Products has not remitted payment... in connection with the invoices," which "reflect the unpaid principal amounts for raw branded materials and finished products...." *Id.* "[I]n its letter of June 28, 2006, [Cummings] demanded that [BP Products] pay for and pick up all inventory by July 14, 2006. " *Id.* Cummings alleges that "[BP Products has not remitted payment [for the inventory]", and that it "has now sold a portion of that inventory." MDTN-06-890, Document No. 1-2, p. 10, ¶ 29.

Cummings asserts claims against BP Products for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory fraud, and interference with actual and/or prospective business relationships. MDTN-06-890, Document No. 1-2, p. 11, ¶ 30. As an alternative to its claims for breach of contract and breach of the covenant of good faith and fair dealing, Cummings alleges that BP Products is liable under the doctrines of unjust enrichment and promissory estoppel. *Id.* In addition, Cummings states that BP Products "engaged in misleading representations and unfair conduct in violation of the Tennessee Consumer Protection Act." *Id.*

Cummings also asserts claims against Blair and Devorris for breach of contract and breach of the covenant of good faith and fair dealing. MDTN-06-890, Document No. 1-2, p. 11, ¶ 31. In the alternative, Cummings alleges that Blair and Devorris are liable under the doctrines of unjust enrichment and promissory estoppel. *Id.* Cummings further alleges that Blair and Devorris "engaged in promissory fraud", that they interfered with Cummings' business relationships with BP Products, and that they "engaged in misleading representations and unfair conduct in violation of the Tennessee Consumer Protection Act." *Id.*, pp. 11-12, ¶ 31. With respect to Devorris, Cummings asserts a claim

for aiding and abetting these tort and statutory violations. *Id.*, p. 12, ¶ 31.

When the present motion was first filed with the Court, Cummings sought dismissal or abstention from this Court under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 l.Ed.2d 483 (1976). Document No. 8, pp. 10-23. At that time, Cummings believed that its action against BP Products, Blair and Devorris was still pending in the Chancery Court for Davidson County, Tennessee. Coincidentally, the defendants in that action removed the case to the United States District Court for the Middle District of Tennessee on September 15, 2006, which was the same day that Cummings filed its Motion to Dismiss, Stay or Transfer in this Court. Document No. 10; MDTN-06-890, Document No. 1. Now that the Tennessee case has been removed to the District Court, Cummings and Devorris agree that the issues related to dismissal and abstention under *Colorado River* are now moot. Document No. 12, pp. 6-9; Document No. 15, p. 5, n 6. Therefore, Cummings' alternative motions to dismiss or stay this action denied as moot. The only question left to be resolved is whether this case should be transferred to the United States District Court for the Middle District of Tennessee.

The applicable provision is 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "As a threshold question the court must determine whether the action 'might have been brought' in the proposed transferee district." *High River Ltd. Partnership v. Mylan Labs, Inc.*, 353 F.Supp.2d 487, 492 (M.D.Pa. 2005)(citations omitted); *see also Jumara v. State Farm Insurance Company*, 55 F.3d 873, 878-879, (3d Cir. 1995). The question of whether the instant case "might have been brought" in the Middle District of Tennessee does not appear

to be in contention. Document No. 12, pp. 7-18. Since Devorris does not argue that venue would have been improper in the Middle District of Tennessee for purposes of 28 U.S.C. § 1391, and since the record clearly supports Devorris' implicit concession that venue would have been proper there, the Court will proceed to determine whether this case should be transferred to the Middle District of Tennessee "[f]or the convenience of parties and witnesses[]" and "in the interest of justice[.]" 28 U.S.C. § 1404(a).

Devorris contends that this case should not be transferred because of the application of the "first-filed rule." Document No. 12, p. 9. He insists that because he filed his action against Cummings before Cummings commenced the action in Tennessee, this Court should adjudicate the dispute over his consulting fee for the month of July 2006. *Id.* Under the first-filed rule, in cases of concurrent federal jurisdiction, the court which first obtains jurisdiction of a matter must proceed to adjudicate it. *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971-972 (3d Cir. 1988). This rule, which is "designed to promote sound judicial administration and comity among federal courts of equal rank[,]" is "applicable where the parties have instituted competing or parallel litigation in separate federal courts." *Zokaites v. Land-Cellular Corporation*, 424 F.Supp.2d 824, 838 (W.D.Pa. 2006)(citations omitted). "Nevertheless, courts are to avoid 'wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith or forum shopping.'" *Id.* at 838, quoting *EEOC*, 850 F.2d at 972. Where the rule applies, "courts have discretion to depart [from it under] certain circumstances." *Koresko v. Nationwide Life Insurance Company*, 403 F.Supp.2d 394, 399 (E.D.Pa. 2005). Such circumstances include, but are not limited to, situations in which "the second-filed action is further along than the first action," or in which "the first-filing party instituted suit in one forum in

anticipation of the opposing party's imminent suit in another less favorable forum." *Id.*

Devorris devotes a considerable portion of his brief to arguing that Cummings has failed to demonstrate the existence of unusual or exceptional circumstances justifying a departure from the first-filed rule. Document No. 12, pp. 14-18. Those arguments, however well-reasoned they may be, clearly put the cart before the horse. Before addressing the question of whether the circumstances of this case permit a departure from the first-filed rule, the Court must determine whether the first-filed rule is applicable. Very recently, the United States District Court for the District of New Jersey noted that "the Third Circuit Court of Appeals has interpreted the 'first-filed' rule narrowly, holding that it only applies to 'truly duplicative' proceedings." *Kedia v. Jamal*, 2007 U.S. Dist. LEXIS 30343, at *8 (D.N.J. April 25, 2007)(citations omitted). In that case, the District Court concluded that the first-filed rule did not apply because there was "no identity of the parties." *Id.* at 9. In this case, Cummings strenuously argues that the first-filed rule does not apply because this case and the related case pending in Tennessee do not concern indistinguishable issues and parties. Document No. 15, p. 2.

Having extensively reviewed the filings in both this case and the Tennessee case, this Court is convinced that the first-filed rule does not apply. Some courts have held that complete identity of the parties and issues is not required in order for the rule to be applicable. *Toy Biz, Inc. v. Centuri Corporation t/a Estes Industries*, 990 F.Supp. 328, 332 (S.D.N.Y. 1998)("Although the two suits are not identical, complete identity of parties and issues is not required for the first-filed rule to apply; the test is whether the second action embraces the issues in the first action."). Even assuming that two cases involving a slight difference in parties or issues could be considered to be "truly duplicative," that standard is not met under the present circumstances. Cummings' action in Tennessee against BP

Products, Blair and Devorris involves a myriad of claims related to the termination of Cummings' business relationship with BP Products. The instant case involves an allegedly unpaid consulting fee for a single month.[1] Under these circumstances, it is difficult to fathom how Devorris believes that this case is "truly duplicative" of the Tennessee case. For this reason, the Court does not believe that the first-filed rule is applicable in this case. Therefore, the Court need not address the question of whether the circumstances would otherwise warrant a departure from that rule.

It is worthy to note that even if the first-filed rule were applicable to this case, Cummings' Motion to Transfer would not necessarily be defeated. While the first-filed rule can be considered as one factor in the more general transfer analysis under § 1404(a), a finding that the first-filed rule is applicable does not preclude a transfer to the forum where the second action was filed. The inquiries are separate and distinct, and the former does not control the latter. *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.*, 478 F.Supp.2d 983, 989-990 (S.D.Ohio 2007)(explaining that some courts have begun to confuse the first-filed rule with the transfer analysis under § 1404(a)). Consequently, the fact that Devorris' action against Cummings was filed prior to the commencement of Cummings' action against BP Products, Blair and Devorris in Tennessee would not be dispositive of the pending Motion to Transfer in any event.

It remains to be determined whether this case should be transferred to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). In *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879 (3d Cir. 1995), the United States Court of Appeals for the Third

---

[1]The Court acknowledges that the relief sought by Devorris includes installment payments for the balance of the consulting agreement, which spans a period of forty months. Document No. 1-3, p. 2, ¶ 10. His basis for seeking such payments, however, is Cummings' failure to pay the July 2006 consulting fee. *Id.*, ¶ 8.

Circuit explained that "there is no definitive formula or list of factors to consider" in determining whether a transfer under § 1404(a) is appropriate. Nevertheless, courts have generally considered a variety of "private interest factors" and "public interest factors" in making such a determination.

> The private interests have included: plaintiff's forum preference as manifested in the original choice...; the defendant's preference...; whether the claim arose elsewhere...; the convenience of the parties as indicated by their relative physical and financial condition...; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora... ; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)....
>
> The public interests have included: the enforceability of the judgment...; practical considerations that could make the trial easy, expeditious, or inexpensive ...; the relative administrative difficulty in the two fora resulting from court congestion...; the local interest in deciding local controversies at home...; the public policies of the fora ...; and the familiarity of the trial judge with the applicable state law in diversity cases....

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-880 (3d Cir. 1995)(internal citations omitted). The burden of establishing the need for transfer...rests with the movant." *Jumara* at 879 (citations omitted).

In support of its Motion to Transfer, Cummings has produced two declarations by James M. Murray ("Murray"), who is Cummings' Vice President and Chief Marketing Officer. Document Nos. 9 & 16. In his first declaration, Murray states that "Devorris has been paid hundreds of thousands of dollars...under the consulting agreement, but has not provided any consulting services [for]...several years." Document No. 9, p. 2, ¶ 5. He identifies four individuals, including himself, who were witnesses to the facts central to this case, all of whom reside in or around Nashville, Tennessee. *Id.*, p. 3, ¶ 13. His second declaration deals exclusively with the merits of the action currently pending in the Middle District of Tennessee. Document No. 16.

In opposition to Cummings' Motion to Transfer, Devorris relies on his own declaration and that of Philip Devorris, who is the President and CEO of Blair. Document Nos. 13 & 14. The declaration of Philip Devorris, like the second declaration of Murray, deals exclusively with the merits of the Tennessee case. Document No. 14. In his own declaration, Devorris states that he "was unaware of any alleged wider dispute" leading to the filing of the Tennessee action when he filed the instant action, and that all of his "records" concerning the consulting agreement are situated in Altoona, Pennsylvania. Document No. 13, pp. 1-2, ¶¶ 3, 5.

The matters covered in the declarations presented by the parties mostly concern the private interests identified by the Court of Appeals in *Jumara*. With respect to the convenience of the witnesses and the location of records, the Court notes that consideration of these factors is generally limited to the question of availability. *Jumara*, 55 F.3d at 879. Neither party specifically contends that any records or witnesses would be unavailable for a trial held before this Court. Moreover, neither party has specifically informed the Court as to the relative physical and financial condition of Cummings and Devorris. Given the specific nature of the dispute, which concerns the alleged failure of a party in Tennessee to pay for consulting services pursuant to an agreement signed in Pennsylvania but governed by the law of Tennessee, it is clear that neither party can claim that this dispute arose solely in one jurisdiction as opposed to another. While the plaintiff's original choice of forum is normally accorded more weight than the preference of the defendant, that weight is obviated by the existence of a wider dispute involving these parties in the Middle District of Tennessee. Hence, the private interests involved in the present § 1404(a) inquiry are in virtual equipoise.

The public interests involved in this case tip the balance in favor of transferring this action to

the United States District Court for the Middle District of Tennessee. While the enforceability, public policy, local interest and administrative difficulty factors are in equipoise, the remaining two factors point in the direction of a transfer. Devorris concedes that Tennessee law governs the construction of the consulting agreement, given that the agreement contains a choice of law provision in favor of Tennessee law. Document No. 12, p. 13. This Court is certainly competent to ascertain and apply the law of Tennessee, but the United States District Court for the Middle District of Tennessee is undoubtedly more familiar with the law of that jurisdiction than is this Court. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 775, 125 S.Ct. 2814, 162 L.Ed.2d 658, 681 (2005)(Stevens, J., dissenting)(noting that judges on courts of appeals and district courts are more familiar than the United States Supreme Court with the intricacies of state law within their respective jurisdictions). This interest would ordinarily be insufficient to overcome the plaintiff's choice of forum, but this case is different because of the litigation in Tennessee and the needless waste of judicial resources that would result from trying one small aspect of a much wider dispute here in Pennsylvania. While this action concerns only the alleged failure of Cummings to pay a consulting fee for the month of July 2006, the action in Tennessee concerns the overall circumstances of the business relationships between Devorris, Blair, BP Products and Cummings. A refusal to transfer this case to the Middle District of Tennessee would not save Devorris the expense of having to defend himself from the action commenced by Cummings in Tennessee (unless, of course, the District Court for the Middle District of Tennessee were to grant his motion to transfer the Tennessee action to this Court, despite the fact that BP Products has not joined Devorris and Blair in seeking a transfer). Although Devorris claims that Cummings cannot make statements as to "the inconvenience of [BP Products employees]", BP Products is not a party to

this case. Document No. 12, pp. 11-12. The question of whether the Tennessee action should be transferred to this Court is solely the concern of the United States District Court for the Middle District of Tennessee. Therefore, the question of whether this Court would have *in personam* jurisdiction over BP Products is irrelevant. BP Products is not before this Court. Thus, there are significant "practical considerations" that would make a trial in Tennessee "easy, expeditious, or inexpensive[.]" *Jumara*, 55 F.3d at 879.

In concluding that this case should be transferred to the United States District Court for the Middle District of Tennessee, this Court takes judicial notice of the settlement negotiations currently underway in Tennessee. Document No. 21. The District Court for the Middle District of Tennessee recently granted a motion by Cummings for referral to mediation or to a judicially-conducted settlement conference. MDTN-06-890, Document No. 49. There is no reason why the instant case, which concerns only a dispute over a single month's consulting fee, should be allowed to disrupt litigation in Tennessee involving two additional parties and several additional issues. Unlike Cummings, the Court does not understand Devorris' position to be that Cummings should be enjoined from proceeding further in the Tennessee action. Document No. 15, p. 17. Nevertheless, the existence of a wider dispute in Tennessee, to which Devorris is already a party, makes the continuation of an action in this Court a waste of valuable judicial resources. For this reason, the policy embodied in 28 U.S.C. § 1404(a) warrants a transfer of this case to the United States District Court for the Middle District of Tennessee.

An appropriate Order follows.

**AND NOW**, this 26th day of June, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Motion to Dismiss, Stay or Transfer (Document No. 10) is DENIED IN PART as to the Motion to Dismiss or Stay on the ground that it is moot and GRANTED IN PART as to the Motion to Transfer; IT IS FURTHER ORDERED THAT this case be transferred to the United States District Court for the Middle District of Tennessee; IT IS FURTHER ORDERED THAT the Defendant's Motion to Amend (Document No. 22) the Case Management Order (Document No. 20) is DENIED on the ground that it is moot.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**